**Ninth Circuit Court of Appeals No. 23-313**
**District Court Number CR 22-33-M-DWM**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

**UNITED STATES OF AMERICA,**
**Plaintiff-Appellee,**

**-vs-**

**SHAWN LEE BUTTS,**
**Defendant-Appellant.**

---

**BRIEF OF AMICUS CURIAE MONTANA ASSOCIATION OF CRIMINAL**
**DEFENSE LAWYERS, IN SUPPORT OF APPELLANT AND REVERSAL**

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

HONORABLE DONALD W. MOLLOY
SENIOR UNITED STATES DISTRICT JUDGE, PRESIDING

NICHOLAS MILLER, President
NANCY G. SCHWARTZ, Vice President
Montana Association of Criminal
Defense Lawyers
3825 Valley Commons Drive, Ste. 6
Bozeman, MT 59718
(406)586-8330
*Counsel for Amicus Curiae

SUBMITTED: August 18, 2023

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ................................................................. iii

I.     IDENTITY OF AMICUS CURIAE ................................................1

II.    STATEMENT OF COMPLIANCE FOR AMICUS FILING.........................3

III.   SUMMARY OF THE ARGUMENT ...............................................3

IV.   ARGUMENT.................................................................................3

      A.    Hunting and Firearm Possession is a Pervasive and Closely Held Right.     ……  ...............................................................3

      B.    Historical Possession of Firearms for Hunting, Predator Defense, and Associated Uses.........................................................4

      C.    Protection Against Non-Human Threats. ...............................7

      D.    Firearm Use in the Act of Hunting.......................................10

      E.    Montana's Historic Tradition of Ensuring Firearm Possession, Including for Felons. .........................................................11

VII.  CONCLUSION...............................................................................15

CERTIFICATE OF COMPLIANCE.......................................................17

CERTIFICATE OF SERVICE ..............................................................18

# TABLE OF AUTHORITIES

## TABLE OF CASES

*District of Colombia v. Heller*,
554 U.S. 570 (2008)....................................................................................4, 5

*United States v. Wallen*,
874 F.3d 620, 632 (9th Cir. 2017) ..................................................9

*State v. Rathbone*,
110 Mont. 225 (1940). .......................................................................9

*Beecham v. United States*,
511 U.S. 368 (1994)...........................................................................12

*Van Der Hule v. Holder*,
759 F.3d 1043 (9th Cir. 2014) ................................................13, 14

*Van der hule v. Mukasey*,
349 Mont. 88 (2009) ..........................................................................14

*Montana Shooting Sports Ass'n v. Holder*,
727 F.3d 975 (9th Cir. 2013) ........................................................15

*United States v. Rothacher*,
442 F. Supp. 2d 999 (D. Mont. 2006) ..........................................15

## STATUTES AND RULES

### United States Code

16 U.S.C.A. § 1540 ...............................................................................8

18 U.S.C. §921(a)(20)............................................................................12, 13

## Federal Statutes

50 C.F.R. § 17.40 ...................................................................................8

## Federal Rules of Appellate Procedure

Rule 29(a) ......................................................................................2, 3

## United States Constitution

Second Amendment ...........................................................................15

Tenth Amendment .............................................................................15

## Montana Constitution

Art. II, § 28 ............................................................................2, 12, 14

Art. II, § 12 ................................................................................2, 12

Art. IX, § 7 .................................................................................2, 10

Art. II, § 3 ........................................................................................12

## Montana Code Annotated

§ 87-6-106 ........................................................................................9

§ 87-6-205 ......................................................................................11

§ 87-3-129 ......................................................................................11

§ 45-8-321 ......................................................................................14

§ 45-8-313 ......................................................................................14

§ 45-8-314 ......................................................................................14

**Montana Legislation**

2009 Montana Laws Ch. 332 ......................................................................14

**Other Sources**

Smith, M.
   '*Wolves and Grizzlies and Bears, Oh My!' – Exploring Contexts for Justice
   Kennedy's Founding Era Application of the Personal Right to Bear Arms*,
   46 S. Ill. U. L.J. 467 (2022)...................................................................5, 6, 11

**Ninth Circuit Court of Appeals No. 23-313**
**District Court Number CR 22-33-M-DWM**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

**UNITED STATES OF AMERICA,**
**Plaintiff-Appellee,**

**-vs-**

**SHAWN LEE BUTTS,**
**Defendant-Appellant.**

_____

**BRIEF OF AMICUS CURIAE MONTANA ASSOCIATION OF CRIMINAL**
**DEFENSE LAWYERS, IN SUPPORT OF APPELLANT AND REVERSAL**

_____

## I.  IDENTITY OF AMICUS CURIAE

The Montana Association of Criminal Defense Lawyers ("MTACDL"

hereafter) is an organization of more than 100 members of the Montana criminal

defense bar.  It includes private attorneys, employees of the Office of the State

Public Defender, Criminal Justice Act Panel Members, and the Federal Defenders

of Montana. MTACDL is also an affiliate of the National Association of Criminal

Defense Lawyers, a nationwide organization of 10,000 dedicated criminal defense

attorneys. MTACDL was formed to ensure justice and due process for persons

accused of crimes in Montana, to foster the integrity, independence, and expertise

1

of the criminal defense profession, and to promote the proper and fair administration of criminal justice.

Montana provides for the rights of the convicted in its Constitution. See MT Const. Art. II, § 28. Full rights are restored by termination of state supervision for any offense against the state. *Id.* Whether Montana citizens are subject to prosecution for violations of federal firearms laws is of great concern to the criminal defense bar in the State of Montana. Montana gives heightened protections to the possession of firearms and the corresponding right to hunt and harvest wild game animals. See e.g., MT Const. Art. II, § 12, Right to bear arms. See also, MT Const. Art. IX, § 7, Preservation of Harvest Heritage.

MTACDL submits this amicus brief because its members have first-hand experience representing many people each year who are arrested, jailed, and prosecuted for exercising their constitutional rights to keep and bear arms. Additionally, MTACDL members represent clients facing prosecution and possible conviction of various state and federal felony offenses, placing their right to possess firearms at risk.

Pursuant to Fed. R. App. P. 29(a), counsel for amicus curiae certify that the filing of this brief is authorized as all parties have consented to the filing.

## II.  STATEMENT OF COMPLIANCE FOR AMICUS FILING

Pursuant to Fed. R. App. P. 29(a)(4)(E), counsel for amicus curiae certify that no party's counsel authored any portion of this brief, in whole or in part. No party or person or entity (other than amicus curiae and its members) has contributed funding to prepare or submit this brief.

## III.  SUMMARY OF THE ARGUMENT

Amicus Curiae argue that Appellant Butts' conviction is contrary to principles of state sovereignty and the long history and tradition in Montana of firearms possession, including by felons, for defensive, hunting, and other purposes.

## IV. ARGUMENT

### A.  Hunting and Firearm Possession is a Pervasive and Closely Held Right

Every day, criminal defense attorneys in Montana represent citizens in court for whom gun possession rights are at risk.  It is not uncommon for MTACDL's members' clients to place a high value on their right to keep and bear arms, and plea negotiations and sentencing efforts sometimes revolve around an appropriate charge or disposition that will preserve a defendant's right to keep and bear arms. In fact, plea negotiations and sentencing efforts often focus on preservation of a defendant's right to keep or bear arms as much or more than other factors such as jail time or length of probation.

3

Mr. Butts himself for example, though having been convicted of State felonies in Montana, was subject to the instant prosecution not by virtue of those convictions, but for a non-violent federal conviction, which ostensibly results in a lifetime ban against possessing firearms.  ER-162–163.

More often than not, clients refer to their "hunting rights" synonymously with the concept of firearm possession, because for many hunting is the central need for firearms.  Hunting has a special role in many of our clients' lives, as a family activity shared across generations, exemplified in this case by the relationship between Mr. Butts, his father, and a 22 caliber rifle bought by a father for his young son.  ER-104.

## B.	Historical Possession of Firearms for Hunting, Predator Defense, and Associated Uses

The Supreme Court went to great lengths in *Heller* to illustrate that the prefatory clause of the Second Amendment, noting the need for a well-regulated militia, serves as the purpose for the codification of the right to keep and bear arms, but does not define or constrain its scope.  *D.C. v. Heller*, 554 U.S. 570, 599, 128 S. Ct. 2783, 2801, 171 L. Ed. 2d 637 (2008).  It is because a *citizen* militia is drawn from the public at large that protecting those citizens' individual rights to private firearm possession becomes so necessary.  *Id*., at 600.  Whether the

government were free to disarm a hunter of his rifle or a homeowner of his pistol is a distinction that the Amendment's text does not draw; the result would be the same – the inability of that person then to take up arms in service to a civilian militia if called upon. *Id.*

The Amendment thus protects the possession and use of firearms for the various purposes they serve, and Americans at the time of the founding valued this "ancient right," "even more important for self-defense and hunting" than for military conflict. *Id.*, at 599.

One commentator has noted that although Justice Kennedy inquired during *Heller*'s oral argument about firearm use for defense "against hostile Indian tribes and outlaws, wolves and bears and grizzlies and things like that," the hunting and wildlife defense histories have not received much scrutiny in the Courts. Mark W. Smith, *'Wolves and Grizzlies and Bears, Oh My!' – Exploring Contexts for Justice Kennedy's Founding Era Application of the Personal Right to Bear Arms*, 46 S. Ill. U. L.J. 467 at 1, 2 (2022). "[H]unting game and killing large domestic animals for food; defending against wild animal attacks; and protecting crops and domesticated animals from depredations by wild creatures: these are some of the more crucial purposes for which colonists and early settlers possessed and used firearms in their

daily lives." *Id*., at 3. These were known, common, and daily uses of firearms at the time of the founding, and they are not relegated to history.

The rancher in Montana still has to deal with the prospect of a mortally wounded livestock animal and the need to be able to euthanize that animal in a quick and humane manner. He equally has the need to defend his livestock against animal predation, or to dispatch a rattlesnake near his home or animals. Additionally, people spend time in habitat occupied by potentially dangerous animals for various other purposes – fishing, hunting, or simple recreation. Any person in such a situation may find a need for a firearm for the activity itself, such as hunting, or simply for self-defense in the case of an unplanned wildlife encounter.

Returning to the example of the rancher, if he has a previous felony Driving Under the Influence conviction under state law, and has finished his sentence, he is likely able to lawfully possess and use a gun for those daily purposes of his occupation. If, however, he has a federal false-statement conviction such as Mr. Butts, he is afforded no such restoration of his civil rights no matter how valued they are by the citizens and lawmakers of Montana.

## C. Protection Against Non-Human Threats

The historical uses listed above are not archaic or forgotten concerns. Every year there are violent and sometimes deadly wildlife encounters in Montana. Less than a year ago, a man was bird hunting near the northwestern Montana town of Choteau when a male grizzly bear "charged out of the brush, knocked the man over and stepped on him."[1] He shot the bear with the firearms he had on his person and suffered non-fatal injuries. The bear was found and euthanized. Like the weapons located in Mr. Butts' case, this hunter carried not only a primary bird hunting weapon, a shotgun, but also a sidearm common for self-defense in the field. ER-148; 151.

Approximately two weeks prior to this filing, a family in the small southwestern town of Luther, Montana awoke in the middle of the night to find a bear in their home. The homeowner shot and killed the bear, and authorities determined it was a killing in self-defense.[2] These types of wildlife encounters are not uncommon throughout the state, occurring with some regularity.

---

[1] https://apnews.com/article/travel-animals-washington-montana-6762199309c6ec96e8d63dd1e5618330 (last accessed August 17, 2023 at 2:53 p.m. MDT).

[2] https://www.sacbee.com/news/nation-world/national/article277977728.html (last accessed August 17, 2023 at 3:01 p.m. MDT).

Encounters with wildlife can result in human fatalities, even for those not involved in hunting. Less than a month ago, a woman was killed while backpacking and camping near Yellowstone Park.[3] In 2022 a man was killed by a grizzly while looking for shed antlers of deer and elk in the springtime in the mountains of south-central Montana.[4] And in 2021, a woman was killed by a grizzly bear while camping in a grassy park area behind a museum within the town of Ovando, Montana, in a rare predatory incident.[5]

Federal law acknowledges that there is a legitimate need to protect oneself or others in the case of a dangerous wildlife encounter. *See, e.g.*, 50 C.F.R. § 17.40 ("Grizzly bears may be taken in self-defense or in defense of others . . ."); 16 U.S.C. § 1540 (killing of a grizzly bear lawful when "based on a good faith belief that [a person] was acting to protect himself or herself, a member of his or her family, or any other individual, from bodily harm from any endangered or threatened species."). This Court recently analyzed those statutes in concluding that a subjective good-faith belief in the need for self-defense is sufficient to raise

---

[3] https://www.latimes.com/california/story/2023-07-24/grizzly-bear-kills-hiker-near-yellowstone-prompting-a-closure-tracking-down-of-animal. (last accessed August 17, 2023 at 2:55 p.m. MDT).

[4] https://www.fieldandstream.com/survival/fatal-grizzly-bear-attack-montana/ (last accessed August 17, 2023 at 2:26 p.m. MDT).

[5] https://igbconline.org/wp-content/uploads/2022/06/20220628_FINAL-BOR-Ovando.pdf (last accessed August 17, 2023 at 4:16 p.m. MDT)

such a defense to a violation of the endangered species act. *United States v. Wallen*, 874 F.3d 620, 632 (9th Cir. 2017).

Similarly, and as a general exception to the restrictions of game management laws, Montana also allows the killing of protected or managed species when they present a threat to persons or to livestock. Mont. Code Ann. § 87-6-106; and even when they are a threat to crops. *See, State v. Rathbone*, 110 Mont. 225, 100 P.2d 86, 91 (1940).

Firearms are the most practical humane way to carry out such protection of life or property, and in *Rathbone*, the Court held that "[i]f [a] statute making it unlawful to kill elk out of season is so construed as to prevent the killing of an elk out of season when reasonably necessary in defense of property, [it] is unconstitutional, since it denies to a person the constitutional right guaranteed to him to protect his property by force if necessary." *Id*. In so doing, the court wrote at length about that defendant's efforts to avail himself of the government's assistance in protecting his property, and the ineffectiveness or untimeliness of such assistance justifying the need for the rancher's personal use of defensive means without waiting for or relying on wildlife officials' help. *Id.*, at 93-95.

The need for immediate self-reliance, and the use of firearms in furtherance of such, is present to an even greater degree when confronting the situation of a

9

personal encounter with a potentially dangerous predator.  Hence the common combination of weapons found in Mr. Butts' constructive possession:  a hunting rifle but also a defensive sidearm for protection in the case of a possible encounter with wildlife.  ER-148; 151.

## D.    Firearm Use in the Act of Hunting

Montana values its hunting heritage to the extent that it has been enshrined in the State Constitution.  "The opportunity to harvest wild fish and wild game animals is a heritage that shall forever be preserved to the individual citizens of the state and does not create a right to trespass on private property or diminution of other private rights."  Mont. Const. Art. IX, § 7.  Firearms of various types are the prevailing hunting weapon, with various types being legal, and certain hunting units or seasons being restricted to a type of weapon, such as traditional muzzle-loaded rifles, or pistols meeting criteria for hunting.[6]

It may be easy to forget, depending on where in this country a person resides, that hunting is not simply a leisure activity or hobby but also a source of

---

[6] Montana published 2023 hunting regulations, available at:
https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ah
UKEwj8r8r7uaAAxVzAjQIHVdCBa4QFnoECC4QAQ&url=https%3A%2F%2Ff
wp.mt.gov%2Fbinaries%2Fcontent%2Fassets%2Ffwp%2Fhunt%2Fregulations%2
F2023%2F2023-dea-regulations-final-
forweb.pdf&usg=AOvVaw1zpfrpUpwiwprIHS2kLOku&opi=89978449

food for many. "On the frontier, many pioneers lived almost entirely off meat from game they had killed; others practiced agriculture and kept some livestock but still relied heavily on firearms to feed themselves and their families." Smith, *supra*, at 25.

While the concept of hunting for sustenance may be less common these days, in Montana hunters are legally required to preserve usable meat. Mont. Code Ann. § 87-6-205 (criminalizing the waste or abandonment of killed game animal suitable for food). For those in extreme need, hunting presents a centuries-old means of sustenance that cannot be taken away even with the enforcement of modern game management and regulatory schemes. Mont. Code Ann. § 87-3-129 (taking wildlife "for the purpose of preventing great suffering by hunger" exempted from regulations including season and licensing restrictions in cases of need).

## E. Montana's Historic Tradition of Ensuring Firearm Possession, Including for Felons

Montana has gone to great lengths to preserve firearms possession even for those convicted of crimes. Montana's enumerated constitutional rights "include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing

and protecting property …" Mont. Const. Art. II, §3.  In furtherance of those rights, the constitution protects the right to bear arms, Mont. Const. Art. II, § 12. Pertinent to Mr. Butts, Montana's Constitution restores full civil rights upon "termination of state supervision for any offense against the state."  Mont. Const. Art. II, § 28.

Federal prosecutions have consistently challenged the ability of Montana's constitutional and statutory provisions to ensure its citizens' right to keep and bear arms.  Against the backdrop of Montana's clear constitutional directive to restore felons to their pre-conviction civil rights, prosecution of felon-in-possession laws have marched onward, occasionally conflicting with, and defining the scope of, Montana's ability to restore the rights of convicted persons.

The Supreme Court has long held that the exemption for felons whose rights have been restored pursuant to 18 U.S.C. §921(a)(20) applies only to a conviction under state law; only the federal government can restore gun possession rights for a federal felon. *Beecham v. United States*, 511 U.S. 368, 374, 114 S. Ct. 1669, 1672, 128 L. Ed. 2d 383 (1994)

Montana has at times responded in a manner to clarify and ensure that state-convicted felons should be restored the right to possess firearms, with limited exceptions.  For example, Frank Van der hule was a state-convicted felon whose

12

civil rights had been restored by operation of Montana law. *Van Der Hule v. Holder*, 759 F.3d 1043, 1045 (9th Cir. 2014). He sought a declaratory ruling that he was then authorized under federal law to possess firearms. *Id*. This Court concluded under the "unless" clause of §921(a)(20); that if a residual restriction on the felon's right to possess guns remains following restoration of rights under State law, then possession of firearms is illegal under federal law. *Id*., at 1046.

Although Van der hule may have been fully authorized under state law to buy, use, and possess a gun, he was unable to obtain a concealed weapons permit. *Id*., at 1047. As such, this burden on his rights was enough to trigger the "unless" clause and nullify the otherwise-applicable restoration of his firearm rights. *Id*., at 1051.

The more pertinent part of Frank Van der hule's story to this case, however, is not the holding of this Court or that of the District Court before it, but the subsequent actions taken by the Montana legislature. The District Court of Montana had similarly considered Van der hule's eligibility to possess a gun under state law, certifying a question to the Montana Supreme Court regarding any restrictions of his rights that might linger in state law. This litigation was playing out over the winter of 2008-09, and the Montana Supreme Court ruled on January 27, 2009, that Van der hule was indeed prevented from obtaining a concealed

13

weapon permit. *Van Der Hule v. Mukasey*, 2009 MT 20, ¶ 2, 349 Mont. 88, 89, 217 P.3d 1019, 1020 (2009).

Exactly three months later, the 2009 Montana legislature had already taken action to implement the State's constitutional restoration of civil rights clause to concealed weapon permit applicants with felony backgrounds, with limited exceptions.[7] "A person, except a person referred to in subsection (1)(c)(ii), who has been convicted of a felony and whose rights have been restored pursuant to Article II, section 28, of the Montana constitution is entitled to issuance of a concealed weapons permit if otherwise eligible." Mont. Code Ann. § 45-8-321 (2009). Meaning, by the time the *Van Der Hule* case even arrived at this Court, the law had already been changed to ensure that most felons' rights were completely restored. *See*, 2009 Montana Laws Ch. 332.

The conflict between a State's desire to regulate some aspect of firearm production, sale, and possession and the federal government's regulations of the same has raised tensions between the United States' authority to regulate under the

---

[7] The exceptions include those with a pending felony charge or warrant, those still serving a felony sentence, and those convicted of certain enumerated offenses, Mont. Code Ann. § 45-8-321(1)(b), (c), and (d); a felony conviction where a penalty enhancement for a weapon's use was imposed, or when a person is currently required to register as violent or sexual offender, Mont. Code Ann. § 45-8-313(1), *but see*, Mont. Code Ann. § 45-8-314 (provision for such persons to apply for gun possession despite restriction).

Commerce Clause and the basic principle of the States' reserved rights as enshrined in the Tenth Amendment to the United States Constitution. *See, e.g., Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013)(Dkt. #28, amicus outlining tension, arguing for lack of preemption in federal regulations). However, a Montana Federal District Court faced directly with this dichotomy of a state wishing to restore civil rights to its citizens and a federal governmental regulation primed to take them away, held that the Tenth Amendment does not offer any respite from the enforcement of the federal prosecution of felon-in-possession laws. *United States v. Rothacher*, 442 F. Supp. 2d 999, 1005–06 (D. Mont. 2006).

So, where a person in Mr. Butts' situation with a federal felony conviction faces prosecution, he comes now before this Court to present his case based upon the supreme law of the land; the Bill of Rights is the first line of defense for Americans' civil liberties, and yet has become a place of last resort for Butts amongst the body of precedent previously addressing felons in possession of firearms.

## VII. CONCLUSION

Amicus Curiae asks this Court to consider Mr. Butts' appeal not simply in the context of his Second Amendment claim, but against the backdrop of States'

rights, and in consideration of the realities of firearm possession and their various recreational and defensive uses in Montana by everyday citizens. Citizens who are at times defendants, and sometimes felons. In addition to the lack of historical analogues argued by Mr. Butts in his opening brief, the deprivation of the right to bear arms by convicted felons is not a fact of life across the board, taken for granted as justified and constitutional, at least not in Mr. Butts' home state.

RESPECTFULLY SUBMITTED this 18th day of August, 2023.

MTACDL
By: */s/Nicholas Miller*
Nicholas Miller
President, MTACDL
*/s/Nancy Schwartz*
Nancy Schwartz
Vice President, MTACDL

Counsel for Amicus Curiae

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this Brief of Amicus Curiae MTACDL is in compliance with Ninth Circuit Rules 29 and 32. The Brief's line spacing is double spaced. The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains less than 7,000 words, including footnotes and quotations. (Total number of words: 3,240, excluding tables and certificates).

DATED this 18th day of August, 2023.

MTACDL

By:   */s/Nicholas Miller*
Nicholas Miller
President, MTACDL
*/s/Nancy Schwartz*
Nancy Schwartz
Vice President, MTACDL

Counsel for Amicus Curiae

## <u>CERTIFICATE OF SERVICE</u>
**Fed.R.App.P.25**

I hereby certify that on August 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

MTACDL

By: */s/Nicholas Miller*
Nicholas Miller
President, MTACDL
*/s/Nancy Schwartz*
Nancy Schwartz
Vice President, MTACDL

Counsel for Amicus Curiae